* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Donovan. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and of the subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of the alleged injury and/or occupational disease and an employer-employee relationship existed between them. The above-designated carrier was on the risk at the time of the injury, alleged or otherwise.
4. Plaintiff contends that he suffered a compensable injury by accident or specific traumatic incident to his cervical spine on or about March 20, 2006. Defendants denied this claim pursuant to the Form 61 filed with the Industrial Commission.
5. Plaintiff earned an average weekly wage of $725.00, yielding a compensation rate of $483.33 per week.
6. Plaintiff last worked for Smithfield Packing, Inc. on April 8, 2006.
7. Plaintiff has received short-term disability benefits from the self-funded short-term disability plan provided by his employer in the total amount of $3,640.00, and defendants are entitled to a credit for said benefits paid to the plaintiff.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty years old and had completed the ninth grade. He began working at Smithfield Packing Company in 1999 as a truck driver and/or "spotter." Prior to working for Smithfield, plaintiff drove trucks *Page 3 
and other equipment including a forklift for other employers after serving over 20 years in the National Guard.
2. Plaintiff's duties included moving trailers, weighing them at an on-site scale, and otherwise maintaining order among the many trucks and trailers entering and leaving the meat packing facility. Smithfield owned some of the trucks, while others were owned by private, third party freight carriers.
3. Plaintiff sought and received treatment for neck, shoulder and radicular arm pain on several occasions prior to his alleged injury of March 20, 2006. Specifically, plaintiff was treated in May 2005 for complaints of pain in his shoulder and trapezius and in January 2006 for complaints of neck, shoulder and radicular arm pain for which plaintiff was referred to physical therapy. Plaintiff underwent an extensive physical therapy evaluation on February 3, 2006, whereby plaintiff was diagnosed with disc derangement at the C5-6 level causing pain and radicular symptoms in plaintiff's left arm. None of plaintiff's prior injuries were disabling as defined by the Workers' Compensation Act.
4. On March 20, 2006, plaintiff was performing his regular duties in the late afternoon, and was cleaning up the "wash bay" where trucks were cleaned. He was backing up trailers and "dropping" them at the dock. Plaintiff got back into his "spotter" truck and reached back to close the door. The door stuck when plaintiff pulled it and he felt an immediate snapping sensation in his right shoulder, accompanied by pain and numbness through the arm to his fingertips.
5. Plaintiff proceeded directly to the Smithfield office to report the injury. He spoke with Mr. Jeff Walker, the superintendent for his shift. Mr. Walker provided plaintiff with an Accident Reporting and Treatment (ART) Form. The ART Form describes plaintiff's symptoms *Page 4 
as "pain from the neck down right arm," noted that the incident occurred in the wash bay, and that defendants took the report on the date of the occurrence, March 20, 2006. On page two of the ART Form, plaintiff explained further that the pain developed suddenly, and that "it felt like something pop [sic] in my neck" while he was closing the door on the spotter truck. Personnel in the office of the plant clinic completed the ART Form, which was thereafter signed by plaintiff and his supervisor.
6. On the date of injury, defendant-employer referred plaintiff to the on-site medical facility where he was provided with an ice pack. Plaintiff returned to the plant clinic on the following day when his condition failed to improve. Plaintiff was referred to Smithfield Family Medical Center, where he was initially seen by Dr. Michael Smith, the director of the Center. Though plaintiff believed that he was unable to perform his job duties as a result of his medical condition, Dr. Smith did not immediately disable plaintiff from the job.
7. On March 27, 2006, plaintiff returned to the Smithfield Family Medical Center and was given restrictions of no driving trucks, no lifting over ten pounds and no work above head level. He took the note to his supervisor who assigned plaintiff to punch-in to work, not to participate in any duties but rather "to stay out of the way." Plaintiff continued to punch-in to work until April 8, 2006, his last day of working for defendant-employer.
8. Plaintiff presented to orthopedic surgeon Dr. Mark Rodger for a one time evaluation on April 21, 2006. Plaintiff presented with complaints of neck pain and right shoulder pain radiating into his right arm. Plaintiff provided a history of having no similar symptoms in these areas prior to the March 20, 2006 incident. Dr. Rodger ordered an MRI that was performed on April 11, 2006. The MRI showed "significant congenital spinal stenosis and significant degenerative disc disease in his cervical spine." Dr. Rodger opined that these *Page 5 
conditions predated plaintiff's injury at work. Dr. Rodger diagnosed plaintiff with "neck pain due to degenerative disc disease and probably soft tissue injury from a work injury." Dr. Rodger recommended physical therapy and ultimately pain management or surgery.
9. On March 12, 2006, plaintiff presented to neurosurgeon Dr. George A. Alsina with complaints of neck and right arm pain. There were no left-sided symptoms. Plaintiff provided a history of injury consistent with that related above. Dr. Alsina opined that plaintiff's symptoms were consistent with upper spinal cord pathology. Dr. Alsina reviewed plaintiff's MRI and determined that plaintiff suffered from stenosis of the spinal canal and the neural foramen at C5-C6. He further opined that the event of March 20, 2006 exacerbated the prior existing underlying degenerative condition of plaintiff's upper spine.
10. Dr. Alsina performed a C4-5/C5-6 anterior cervical diskectomy and fusion on plaintiff on May 19, 2006. By June 7, 2006, plaintiff presented with a decrease in arm numbness, a fifty percent reduction in arm pain and a reduction in neck pain. Plaintiff underwent a second MRI and an EMG in August 2006. Both studies were deemed "normal," although plaintiff continued to experience some right arm and neck pain along with weakness in the right hand. On August 23, 2006, Dr. Alsina ordered a transforaminal injection at C3-4 which provided approximately twenty-five percent relief.
11. Plaintiff last presented to Dr. Alsina on September 25, 2006. At that time, Dr. Alsina opined that plaintiff had reached maximum medical improvement as to the surgery, but noted that plaintiff still required follow up with pain management. Dr. Alsina has not provided plaintiff with a permanent partial disability rating as plaintiff has not completed treatment with pain management or undergone a functional capacity evaluation (FCE), which Dr. Alsina requires prior to making that assessment. In addition, Dr. Alsina opined that plaintiff was unable to work after the surgery and he has not released plaintiff to return *Page 6 
to work as plaintiff is still experiencing symptoms and the FCE has not been performed.
12. After examining plaintiff's medical records for the periods prior to the date of injury in this case, Dr. Alsina opined that although plaintiff had experienced pain symptoms, they were not related to his current symptoms. Based upon the greater weight of the medical evidence, the Full Commission finds that plaintiff's prior complaints and symptoms related to his degenerative disc disease are separate and distinct from the symptoms arising from the work-related injury of March 20, 2006.
13. Plaintiff suffered an injury by accident arising out of and in the course of his employment with defendant on March 20, 2006, which ultimately required surgical intervention. Plaintiff has been temporarily totally disabled since that time. Plaintiff has received thirteen weeks of benefits totaling $3,640.00 from a plan funded by defendant-employer. Plaintiff has neither earned wages nor received funds from any source other than the short-term disability benefits reflected above.
14. Plaintiff's average weekly wage at the time of the work-related injury by accident was $725.00, yielding a compensation rate of $483.33 per week.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment on March 20, 2006. N.C. Gen. Stat. § 97-2(6). *Page 7 
2. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $483.33 per week for the period beginning on March 20, 2006 and continuing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Defendants are entitled to a credit against the indemnity benefits due to plaintiff in the amount of $3,640.00 that plaintiff received pursuant to a short-term disability program funded by defendants. N.C. Gen. Stat. § 97-42.
4. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1, including the surgery of May 19, 2006 and the pain management therapy and FCE recommended by Dr. Alsina. N.C. Gen. Stat. § 97-2(19).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved and a credit allowed to defendants for payments made pursuant to a short-term disability plan funded by defendants, defendants shall pay temporary total disability compensation to plaintiff at the rate of $483.33 per week for the period beginning on March 20, 2006 and continuing until further order of the Industrial Commission. That portion of said compensation which has accrued shall be paid in a lump sum. *Page 8 
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff is hereby approved to be deducted from the lump sum due plaintiff and paid directly to counsel. Thereafter, every fourth check shall be paid directly to plaintiff's counsel.
3. Defendants are due a credit in the amount of $3,640.00 paid to plaintiff pursuant to an employer funded short-term disability plan.
4. Defendants shall pay for medical expenses incurred or to be incurred as a result of the compensable injury including the May 19, 2006 surgery and the pain management therapy and FCE recommended by Dr. Alsina, when bills for the same have been submitted according to established Industrial Commission procedures.
5. As plaintiff has not reached maximum medical improvement, this Opinion and Award does not address the issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may file a Form 33 Request for Hearing with the Commission to resolve this matter.
6. Defendants shall pay the costs.
This the 19th day of November, 2007.
S/_____________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
S/_____________________ BERNADINE S. BALLANCE COMMISSIONER *Page 9 
S/_____________________ BUCK LATTIMORE COMMISSIONER *Page 1